**FLOWERS, Secretary of State, et al. v. PECOS RIVER R. CO.**

**No. 9107.**

Court of Civil Appeals of Texas. Austin.

April 30, 1941.

Rehearing Denied May 14, 1941.

Gerald C. Mann, Atty. Gen., and Geo. W. Barcus, Cecil C. Cammack, and Ocie Speer, Asst. Attys. Gen., for appellants.

Claude Pollard, of Austin, and Terry, Cavin & Mills and Ballinger Mills, Jr., all of Galveston, for appellee

BLAIR, Justice.

Appellee, Pecos River Railroad Company, sued appellants, M. O. Flowers, Secretary of State, and the other named state officials, under the provisions of Art. 7057b, Secs. 1 and 2, Vernon's Ann.Civ.St., to recover $325 paid by it, under protest, as a part of the fees charged by the Secretary of State for filing the renewal of its charter for a period of 50 years. A trial to the court upon an agreed statement of facts resulted in judgment for appellee as prayed; hence this appeal.

Appellee is a railroad corporation and subject to the provisions of what is now Title 112, R.S.1925, Vernon's Ann.Civ.St. art. 6259 et seq., and particularly Arts. 6267 and 6268 with respect to the expiration and renewal of its charter. It was incorporated on March 1, 1890, and unless renewed its charter would have expired on March 1, 1940. It applied to the Secretary of State for such renewal under the method prescribed by Art. 6268. On and before the date of its application for renewal or extension of its charter, its capital stock was and had been $750,000. No other amendment or change of its charter other than the renewal or extension of time for a period of 50 years was applied for. Appellee paid $525 to the Secretary of State, $200 being paid as the amount it claimed to be due, and $325 being paid under protest, which it claimed was not due under proper construction of the applicable statutes.

Art. 3914, under which the Secretary of State demanded and collected the filing fees in suit, reads as follows:

"The Secretary of State is authorized and required to charge for the use of the State the following other fees:

"Upon filing each charter, amendment, or supplement thereto of a channel and dock, railroad, magnetic telegraph line, street railway or express corporation, a filing fee of Two Hundred ($200.00) Dollars, provided, that if the authorized capital stock exceeds One Hundred Thousand ($100,000.00) Dollars, an additional filing fee of Fifty Cents for each One Thousand ($1,000.00) Dollars authorized capital stock or fractional part thereof, after the first One Hundred Thousand ($100,000.00) Dollars, shall be paid."

This article is a part of Title 61, R.S. 1925, Vernon's Ann.Civ.St. art. 3882 et seq., as amended in 1931, Acts 1931, 42nd Leg. p. 204, c. 120, Vernon's Ann.Civ.St. art. 3914, which title relates to "Fees of Office" required to be collected by the Secretary of State.

Title 112, relating to "Railroads", and its predecessors under the several codifications of our statutes have specifically provided the manner by which railroads may be incorporated, and Art. 6268, a part of said Title 112, and its predecessors under the several codifications of our statutes, have always provided a specific method for the renewal or extension of corporate charters of railroads for periods of 50 years.

Title 32, R.S.1925, Vernon's Ann.Civ. St. art. 1302 et seq., and its predecessors under the several codifications of our statutes, relate to and have provided for the time and manner of the organization of private corporations, and is entitled "Corporations—Private." There was no provision made for the renewal or extension of the charter of private corporations organized under this title until 1937, when the Legislature enacted Arts. 1315(a) and 1315(b), Acts 1937, 45th Leg., p. 368, c. 179, and Acts 1937, 45th Leg., 1st C.S. p. 1773, c. 14. The material portions of Art. 1315(a) read as follows:

"That Article 1315 of the Revised Civil Statutes of Texas, of 1925, be and the same hereby is amended by adding thereto Article 1315(a) to read as follows:

"Article 1315(a). Subject to a finding by the Secretary of State as hereinafter provided, any private corporation organized or incorporated for any purpose or purposes authorized under this Title, at any time within ten (10) years prior to the expiration of its charter, or any extension thereof, may extend such charter and the corporate existence of such corporation for an additional period of not to exceed fifty (50) years from the expiration date of the original charter, or any extension thereof, with all the privileges, powers, immunities, right of succession by its corporate name, and rights of property, real and personal, exercised and held by it at such expiration date, to the same intents and purposes as upon original incorporation. The manner of extending any such charter shall be by a resolution in writing, adopted at any annual or special meeting of stockholders called for that purpose by stockholders holding a majority of the shares of capital stock of such corporation then outstanding, such resolution to specify the period of time for which the charter is extended, and a copy of such resolution, duly certified by the secretary of the corporation, under the corporate seal, shall be filed and recorded in the office of the Secretary of State. Upon the adoption of such resolution and the filing of a certified copy thereof with the Secretary of State, together with payment of the filing fee herein prescribed, the charter and corporate existence of such corporation may be extended for the additional period of time recited in such resolution. The filing fee to be paid for any such extension of a charter shall be such fee as said corporation would be required under the Statutes of Texas to pay in the event it was then applying for a new charter instead of extending its then existing charter."

The emergency clause of this act reads, in part, as follows: "The fact that there is now no General Law providing for the extension of corporate charters, and the fact that securities of Texas corporations are being discriminated against because investors have questioned the validity of any such securities where the maturity date thereof was subsequent to the expiration date of the charter of the corporation issuing such securities, and the fact that this operates as a handicap to the fair and proper financing of Texas corporations create an emergency * * *." Section 2.

Art. 1315(b) is an amendment of Art. 1315(a) and was passed at the 1st Called Session of the same Legislature, and reads as follows: "The provisions of Article 1315(a) shall extend to and include all private corporations incorporated under the general laws of Texas. The period of ten (10) years prior to the expiration of the charter or any extension thereof referred to in Article 1315(a) shall include the period of time during which such corporation may have continued its existence under the provisions of Article 1389 of the Revised Civil Statutes of 1925."

The emergency clause of this act reads, in part, as follows: "The fact that it is not clear whether the provisions of Article 1315(a) of the Civil Statutes of Texas passed in 1937 include all private corporations incorporated under the general laws of Texas, or whether the period of ten (10) years prior to the expiration of the charter or any extension thereof referred to in Article 1315(a) includes the period of time during which such corporation may have continued its existence under the provisions of Article 1389 of the Revised Civil Statutes of Texas, and the fact that securities of Texas corporations are being discriminated against * * *." Section 2.

■ The question presented is whether the Legislature intended by the enactment of Arts. 1315(a) and 1315(b) to amend Art. 3914 so as to provide that a railroad corporation should pay the additional filing fees calculated on the amount of its existing stock for the mere renewal or extension of its existing corporate charter, no other amendment or change in its capital stock being sought. We have reached the conclusion that the Legislature did not so intend. Appellants concede that Art. 1315(a), standing alone, did not have such effect, because by its own terms its provisions were limited to private corporations incorporated under Title 32. But it is contended that by the enactment of Art. 1315(b) as an amendment to Art. 1315(a) and so as to "include all private corporations incorporated under the general laws of Texas, * * *" within the statute, the Legislature intended to require that all corporations, including railroad corporations, should pay the same filing fees for the renewal or extension of their corporate charters. The language quoted clearly limited the operation of

Art. 1315(a) to "private corporations incorporated under the general laws * * *." It made no mention of or reference to corporations incorporated under special or specific statutes, such as railroad corporations. And it is generally held that "statutes governing the extension or renewal of the period of existence of corporations generally have been held not, applicable to a particular type of corporation with regard to which specific statutes had been enacted." 13 Am.Jur., 229; Chicago, B. & Q. R. Co. v. Doyle, 258 Ill. 624, 102 N. E. 260, Ann.Cas.1914B, 385; 108 A.L.R. 70.

■ Furthermore, it is obvious that the Legislature did· not intend that Arts. 1315(a) and 1315(b) should apply to railroad corporations because the main purpose for their enactment did not affect nor serve any purpose as regards railroad corporations. The main purpose for the enactment of Arts. 1315(a) and 1315(b) was to provide for the renewal or extension of charters of private corporations organized under Title 32 or under general laws, because prior to the enactment of said articles in 1937 no statute by specific language provided for the renewal or extension of a charter of a private corporation incorporated under Title 32 or under general laws. The emergency clauses specifically recited that the purpose of the 1937 acts (Arts. 1315(a) and 1315(b) was to provide for the renewal or extension of charters of "private corporations" organized under Title 32 or under the general laws; and the provision for the payment of filing fees for the renewal or extension of the charters of private corporations as provided by Arts. 1315(a) and 1315(b) was merely incidental to the authority or right to renew or extend their charters, which was the main purpose of the said acts. Art. 6268 and its predecessors have always provided for the renewal or extension of a charter of a railroad corporation incorporated under Title 112 and its predecessors; and since railroad corporations have always had the right to renew their charters in the manner provided by special statutes relating to railroad corporations, the Legislature could have had no purpose in attempting to amend the law so as to give railroad corporations the right to renew or extend their charters after the expiration thereof.

■ To construe Arts. 1315(a) and 1315(b) as contended for by appellants would amend Art. 6268 with regard to the renewal or extension of the corporate charters of railroad companies incorporated under Title 112, which article provides a special method or manner for the, extension of time or renewal of the charters of railroad corporations. Both the method and the time prescribed by Art. 1315(a) for the renewal of corporate charters of private corporations incorporated under Title 32, or under the general laws, are different from that prescribed by the specific railroad statutes. It is true that in some instances statutes may be amended by inference or by general provision and language that show a clear intention of the Legislature to, amend a statute not referred to in the amendatory act; but we do not regard that rule as being applicable here. The Legislature knew that railroad companies had the right to renew or extend their charters under the special railroad statutes. Its attention, according to the emergency clauses of Arts. 1315(a) and ·1315(b) had been called to the fact that all other corporations organized under Title 32 or under the general laws of Texas did not have specific statutory authority to renew or extend their charters. So, it is· therefore manifest that private corporations incorporated under Title 32 or under general laws were the corporations with which the Legislature undertook to deal by the enactment of Arts. 1315(a) and 1315(b). No specific reference was made to railroad corporations organized under special statutes relating to railroads; and since the special railroad statutes have always specifically provided the manner in which railroads may renew or extend their charters, we find nothing in the language of the articles in question which would evidence the intention· of the Legislature to in any manner change the special statutes governing railroads or amend them, or to show an intention to substitute a new method or manner for the renewal or extension of the corporate charters of railroad companies. At most the amendment or repeal of Art. 6268 would be by implication only, and the law does not favor the amendment or repeal of a statute by implication.

Appellants further contend that since Arts. 1315(a) and 1315(b) also enacted the special provision which deals for the first time with renewal or extension fees for the services rendered by the Secretary of State, the Legislature necessarily intend-

ed to enlarge upon and change the general provisions of Art. 3914 so as to require filing fees for this special type of amendment to a charter, and intended to include all corporations whether organized under special statutes or not. This contention is answered by our above conclusion that the provisions of Arts. 1315(a) and 1315(b) were intended to apply only to private corporations organized under Title 32 or under general laws of Texas, and were not intended to apply to railroad corporations organized under our special railroad statutes.

It is true that Art. 3914 was amended by Arts. 1315(a) and 1315(b) so as to require private corporations to pay the filing fees prescribed by Art. 3914 for the service of renewing or extending their charters. It is also true that Art. 3914 authorized the collection of fees for the filing of original charters or amendments thereto from railroad corporations, as well as any other corporation incorporated under the laws of Texas. But since Arts. 1315(a) and 1315(b) apply only to corporations incorporated under Title 32 or the general laws, their enactment did not repeal or amend by implication Art. 3914 so as to require railroad corporations to' pay the same filing fees charged private corporations for renewal or extension of their corporate charters. Prior to the enactment of Arts. 1315(a) and 1315(b), the Attorney General by an opinion to Hon. A. J. Power, Secretary of State, dated May 22, 1933, construed Art. 3914, holding that the renewal or extension of a charter of a railroad corporation constituted an amendment thereto, and that such corporation was liable for the payment of only the minimum $200 filing fee provided by Art. 3914 for any charter amendment; and that the organization fee based upon a calculation of capital stock need not be paid where the capital stock was not increased at the time of the renewal or extension of the corporate charter. This opinion followed the rule announced in the case of Ohio Valley Tie Co. v. Bruner, 148 Ky. 358, 146 S.W. 749. A like construction was placed upon the predecessor of Art. 3914 by the Supreme Court of Texas in St. Louis, etc., R. R. Co. v. Tod, 94 Tex. 632, 64 S.W. 778. An opinion by the Attorney General to Hon. Tom L. Beauchamp, Secretary of State, dated May 18, 1939, cited the former opinion of the Attorney General in 1933 with approval, and held that the renewal or extension of a railroad charter constituted an amendment for which the railroad was entitled to pay the minimum $200 filing fee, and this notwithstanding the prior enactment of Arts. 1315(a) and 1315 (b) in 1937. By a later opinion, dated March 30, 1940, to the Hon. M. O. Flowers, Secretary of State, the Attorney General ruled that Art. 3914 was amended by Arts. 1315(a) and 1315(b) so as to include railroad corporations and to require them to pay the same filing fee for renewal or extension of their charter as they would be required to pay for a new charter, that is, $200 plus fifty cents for each $1,000 of capital stock or fractional part thereof over and above the first $100,000; and it was upon this opinion that the Secretary of State demanded the additional fee of $325 based upon the capital stock involved in this case, and paid under protest.

We hold that the provisions of Arts. 1315(a) and 1315(b) relate to private corporations and are not applicable to railroad corporations organized under special statutes; and that the trial court correctly held that the amount due was the minimum $200 filing fee as in case of an amendment to the charter, and we accordingly affirm the judgment of the trial court.

Affirmed.